# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| REBECCA A. HOWARD, | : | |
| Plaintiff, | : | Case No. 3:09cv00179 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Rebecca A. Howard brings this case pro se challenging the Social Security Administration's denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). This Court has jurisdiction to review the administrative denial of Plaintiff's applications. *See* 42 U.S.C. §§405(g), 1383(c)(3). The case is before the Court upon Plaintiff's Statement of Errors (docketed as Plaintiff's Response to Order to Show Cause) (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #13), the administrative record, and the record as a whole.

Liberally construing Plaintiff's Statement of Errors in her favor, she seeks an award of DIB and SSI or, at a minimum, a remand to the Social Security Administration for a fair hearing.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

The Commissioner seeks an Order affirming the ALJ's decision.

## II. Background

### A. Procedural History

Plaintiff filed DIB and SSI applications in December 2004 asserting that she was under a "disability" within the meaning of the Social Security Act. She alleged that her disability consisted of a combination of medical problems including fibromyalgia, depression, anxiety, migraine headaches, glaucoma, and asthma. *See* Tr. 663. She identified May 28, 2003, later amended to December 15, 2004, as the date her disability began. *See* Tr. 20. From then on, according to Plaintiff, her disability prevented her from working.

Following initial administrative denials of her applications, Plaintiff received two hearings before Administrative Law Judge (ALJ) Thaddeus J. Armstead Sr. (Tr. 698-808). An attorney represented Plaintiff during each hearing, and she testified during each hearing.

After the second hearing ended, ALJ Armstead issued a written decision concluding that Plaintiff was not under a disability within the meaning of the Social Security Act, and she was consequently not eligible to receive DIB or SSI. (Tr. 20-42). ALJ Armstead's written decision is at issue in the present case.

### B. Plaintiff And Her Testimony

Plaintiff was age forty-three on the date of the ALJ's non-disability decision. She was consequently considered a "younger person" for purposes of resolving her DIB and SSI applications. (Tr. 40). She earned a high school education and about one year of college credits. Her past jobs involved work as a quality inspector, a silk screen operator, and a computer support engineer. (Tr. 40, 122).

During the ALJ's first hearing Plaintiff testified that she could not work due to her fibromyalgia, extreme fatigue, depression, anxiety, migraine headaches, and irritable

2

bowel syndrome. (Tr. 708). She described additional problems with vertigo. Her vision sometimes causes her have difficulty reading. (Tr. 707). She further testified that she had a chronic cough due to asthma, allergies to various substances, and sensitivity to strong smells. (Tr. 708, 721, 726).

Plaintiff explained that she was first diagnosed with fibromyalgia in 1992 or 1994 but worked until 2003. (Tr. 709). She stated that her fibromyalgia caused "daily, if not hourly" pain in her neck, shoulders, low back, arms and legs. (Tr. 711, 728). On a pain scale from zero to ten (no pain to excruciating pain), Plaintiff estimated her pain at seven or eight. (Tr. 728). She experienced this level of pain "[d]aily, if not hourly." *Id*.

Plaintiff testified that since 2003, she gets migraine headaches three or four times per week. (Tr. 714). She noted that her medication made her drowsy, dizzy, nauseated and affected her bowels. (Tr. 716-17). Plaintiff explained that insurance problems arose in 2005, which made it difficult for her to receive medical treatment. (Tr. 716).

Plaintiff estimated that she could not sit, stand or walk for very long; she said she could walk for roughly twenty minutes at a time; stand for about fifteen minutes. (Tr. 712, 720). She used a cane and a walker, but said that the walker was issued after a foot injury in 2000. (Tr. 721).

Plaintiff's coughing affected her ability to focus and concentrate. (Tr. 725).

As to her daily activities, Plaintiff cooked very little, did not wash dishes, did the laundry once or twice a month, shopped for groceries, and went to church infrequently (Tr. 717-18). She napped for about two to six hours every day. (Tr. 719).

During the ALJ's second hearing, Plaintiff testified that she suffered from depression and anxiety. (Tr. 756). She explained that she had not obtained consistent mental health treatment before 2007 due to her lack of insurance. (Tr. 757-58). She had a hard time functioning, concentrating, focusing, and keeping a daily routine (Tr. 758, 762, 766); she cried often, felt overwhelmed and guilty, and panicked about small occurrences. (Tr. 760). She began having suicidal thoughts in 2004. (Tr. 763).

3

C. **Medical Evidence**

The administrative record contains many medical records, opinions by Plaintiff's treating medical sources, and opinions of non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because the Commissioner has accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. *See* Doc. #13 at 2-10 (and records cited therein).

III. **Administrative Review**

A. **"Disability" Defined**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

B. **ALJ Armstead's Decision**

ALJ Armstead resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations. *See* Tr. 18-27;

*see also* 20 C.F.R. §404.1520(a)(4), 416.920(a)(4).[2]

ALJ Armstead concluded at Step 1 of the sequential evaluation that Plaintiff had not engaged in any substantial gainful activity after her claimed disability onset date. (Tr. 26).

The ALJ found at Step 2 that Plaintiff's severe impairments included "fibromyalgia, periodic migraine headaches, glaucoma, asthma, dysthymic disorder, [and] depression...." (Tr. 26).

The ALJ concluded at Step 3 that did not have an impairment or combination of impairments that met or equaled the criteria in the Social Security Regulation's Listing of Impairments.[3] (Tr. 31).

At Step 4 the ALJ found:

> The claimant has the residual functional capacity to perform light work[4] ... subject to the following additional limitations: simple repetitive to moderately complex tasks; jobs done primarily at one work station; opportunity to sit or stand at will; no fine print reading; occasional climbing ladders, ropes, or scaffolding; all other posturals are occasional; no exposure to concentrated extremes of heat, cold, wetness, humidity, generally obnoxious odors, fumes, gases and poor ventilation; occasional contact with others on the job, with superficial contact and could work alone, but not in isolation; low pressure for production and pace (for example, using a ten-point scale to measure pressure for production and pace, with 'one' representing least pressure for production and pace and 'ten' representing the greatest pressure for production and pac[e], the claimant would be limited to performing duties at a level of 'five') and no strict time standards.

(Tr. 32) (footnote added). The ALJ also found at Step 4 that Plaintiff was unable to

---

[2] The remaining citations to the Regulations will identify the pertinent DIB Regulation with full knowledge of the corresponding SSI Regulation.

[3] The Listings appear in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[4] Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

perform her past relevant work. (Tr. 40). As to Plaintiff's credibility, the ALJ found, "The claimant's allegations of disability are not supported by substantial medical evidence or clinical findings. Such allegations are found to be disproportionate and less than credible." (Tr. 39).

At Step 5 the ALJ concluded that Plaintiff could perform a significant number of jobs available in the national economy. (Tr. 41).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI. (Tr. 20-42).

## IV. Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.     **Discussion**

   A.     **Plaintiff's Statement Of Errors**

Plaintiff states in pertinent part:

I did not receive a hearing where I was able to simply express my limitations, which have drastically [a]ffected my ability to take care of myself, let alone be productive in any employment.

- most days I cannot drive – at all.
- most days I am unable to go outside my home.
- most days I struggle to feed myself & handle daily [hygiene].
- most days I am unable to handle being around people.

I spend all my energy trying to sleep, go to the bathroom, take medications on schedule, do physical therapy exercise, use therapies for pain & try to stay connected to any family and friends I can still have in my life, under these very limited circumstances. All other energy has gone to seeing doctors or agencies for assistance.

I could not pay my attorney, so he bowed out....

I only wanted to have the facts of my daily situation considered. I had always been a strong dedicated worker. I want nothing more than to be able to work in some capacity but I have been unable to do so.

If I was rewarded SS disability benefits, I would use the income to improve my health as much as possible. I would hope to be able to work, at least

part-time. I am very unhappy not being able to work. I want my life back & I am willing to do whatever I can do to make that happen. I just need help....

(Doc. #8 at 1-2).

  **B.** **Analysis**

**1.**

  Plaintiff's contention that she did not receive a fair hearing because she did not have a full opportunity to describe her limitations lacks merit. Plaintiff testified at some length during the ALJ's first hearing about her physical impairments including, in part, her fibromyalgia, pain, dizziness, and chronic cough, and she testified about her limited ability to engage in daily activities. *See* Tr. 704-29. During the ALJ's second hearing, Plaintiff testified, in part, about her depression and anxiety. Tr. 747-68. She explained that depression made it "hard for her to function, even to take care of [her]self." (Tr. 758). She further explained, "And ... even small tasks would sometimes throw me into a panic, where I had such a difficult time, and still do, concentrating and comprehending, and expressing myself that it causes a lot of anxiety. And that causes a lot of depression." (Tr. 758). When asked to describe her symptoms from the time of her disability onset to the end of 2007, Plaintiff testified:

> Just feeling overwhelmed, not feeling like I could handle daily activities, crying easily, crying often, finding it hard to be a motivator, not interested in things I used to be, feeling very panicked about just often, everyday occurrences, especially if it was something that wasn't everyday. I mean, appointments, having to try to get groceries, are all very stressful.

(Tr. 760). In December 21004, these symptoms led Plaintiff to start having suicidal thoughts. *Id*.

  Although the ALJ cut-off questioning by Plaintiff's counsel during both hearings, the ALJ did so for reasons of time management; nothing in the record of the hearings established that the ALJ held a bias against Plaintiff or her counsel. When evaluating the

8

possibility of an ALJ's bias, "this court must begin with the 'presumption that policymakers with decisionmaking power exercise their power with honesty and integrity.' The burden of overcoming that presumption of impartiality 'rests on the party making the assertion [of bias],' and the presumption can be overcome only with convincing evidence that 'a risk of actual bias or prejudgment' is present." *Collier v. Comm'r. of Social Security*, 108 Fed.Appx. 358, 363-64 (6th Cir. 2004)(quoting in part *Navistar Int'l. Transportation Corp., v. United States EPA*, 941 F.2d 1339, 1360 (6th Cir. 1991)(other citation omitted; brackets in *Collier*). "Stated differently, 'any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference.'" *Collier*, 108 Fed.Appx. at 364 (citations omitted).

The hearing transcripts do not contain convincing evidence that ALJ Armstead held a bias or prejudice against Plaintiff or her counsel. The most egregious indication of a potential bias problem appears where the ALJ told Plaintiff's counsel, "Then please shut up. Okay?" (Tr. 792). This instruction was certainly unprofessional, inappropriate, and unbecoming. It was, however, at most an indication of the ALJ's frustration or anger with counsel. To conclude that this comment betrayed the ALJ's bias would require an inference. Such an inference is insufficient to overcome the presumption of the ALJ's impartiality. *See Collier*, 108 Fed.Appx. at 364; *see Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001)("'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display' do not establish bias.").

No bias also appears from the fact that the ALJ stopped counsel's examination of Plaintiff at both hearings. This is so for two reasons: first, the ALJ's stated reason for stopping counsel's examination was related to his time constraint, rather than a reason indicating bias (Tr. 731, 790); second, the ALJ provided counsel an opportunity to submit a closing memorandum after the first hearing (Tr. 730) and an opportunity to submit additional evidence for thirty days after the second hearing. (Tr. 791-93).

9

Accordingly, neither the ALJ's hearing transcripts nor the administrative record contain evidence or circumstances of bias held by the ALJ. *See Colliers*, 108 Fed.Appx. at 363-64.

**2.**

Turning to Plaintiff's remaining allegations, she essentially challenges the ALJ's non-disability findings by emphasizing her restrictions in daily activities, her limited finances, her desire to work at least part time, and her intent to use DIB or SSI (if granted) to improve her health to the point where she could work. *See* Doc. #8.

A review of the ALJ's decision reveals that he sets forth the correct legal criteria applicable at each Step of the Regulation's five-Step sequential evaluation process. *See* Tr. 23-25; *see also* 20 C.F.R. §404.1520(a)(4). The ALJ also correctly described the legal criteria applicable to evaluating the opinions provided by Plaintiff's treating medical sources, *see* Tr. 34; *see also* 20 C.F.R. §404.1527(d), and to assessing Plaintiff's credibility, *see* Tr. 38-39, *see also*, 20 C.F.R. §4094.1529.

The main limiting problems Plaintiff identifies include fibromyalgia, pain, depression, and anxiety. The United States Court of Appeals for the Sixth Circuit recognizes that fibromyalgia can constitute a severe impairment even though the severity of its symptoms often cannot be confirmed by objective medical evidence. *See Rogers*, 486 F.3d at 243.

A review of *Preston v. Secretary of HHS*, 854 F.2d 815 (6th Cir. 1988) and its progeny is instructive in addressing how to analyze evidence of severity in a fibromyalgia case. In *Preston* the Sixth Circuit noted that the claimant's treating physician "ha[d] done all that can be medically done to diagnose fibrositis and to support his opinion of disability," including testifying that the plaintiff represented "one of the worst cases of fibrositis he ha[d] seen." 854 F.2d at 818, 820. Similarly, in *Rogers*, 486 F.3d at 244, the court found it significant that the claimant's treating physicians documented consistent findings, the elimination of other diagnoses and a progressive worsening of the claimant's

condition. Other cases have distinguished fibromyalgia claims where such evidence of severity was lacking. *See Vance v. Commissioner of Soc. Sec.*, 260 Fed.Appx. 801, 806 (6th Cir. 2008)("unlike in *Rogers* where claimant's fibromyalgia symptoms progressively worsened, [the present claimant's] symptoms have either improved or remained stable") *see also Brazier v. Secretary of HHS*, 1995 WL 418079 at *9 (6th Cir. July 13, 1995) ("the ALJ could properly find that the actions taken by [the claimant's doctors] fell far short of the action taken by the treating physician of the claimant in *Preston*...."); *Potts v. Secretary of HHS*, 1993 WL 303363 at *6 (6th Cir. Aug. 9, 1993) ("unlike the situation in *Preston*..., there is no evidence in the record as to the severity or the effects of plaintiff's fibromyositis.");.

In Plaintiff's case, the ALJ considered the objective medical evidence – such as x-rays, physical examinations in 2003 and 2005, EMG testing, brain scan, and pulmonary function testing – most of which showed that Plaintiff had no functional limitation due to her fibromyalgic pain, asthma, or other physical impairments. *See* Tr. 26-27; *see also* 20 C.F.R. §404.1545(a)(3). The ALJ also considered the opinions of Plaintiff's treating physician, Dr. Adib and explained that his opinions of disability were undercut by both his concurrent opinions that Plaintiff could work on a part-time basis and that her primary impairments were mental and not physical. *See* Tr. 32-35. The ALJ also noted that Dr. Adib's treatment notes showed that she was routinely not in acute distress and that he did not document any limitations consistent with his opinions. Certainly, neither Dr. Adib nor his treatment records offer the kind of compelling proof of limitations found in *Preston* and *Rogers*.

The ALJ also considered the opinion of the medical expert, who found no exertional restrictions. Notably, the ALJ did not fully credit this testimony, instead he found that Plaintiff could only do light work with a sit/stand at will option and other limitations. *See* Tr. 35-36. The ALJ also did not adopt the opinion of consulting examiner, Dr. Danopulos, who also found no limitations due to physical impairments.

*See* Tr. 26-27.

And the ALJ evaluated Plaintiff's credibility as required by the Regulations. *See* 20 C.F.R. §404.1529(c). He noted that her allegations were inconsistent with Dr. Adib's opinion (Tr. 33-34); there was no evidence supporting her use of a cane or walker; her activities of daily living were not inconsistent with his assessment of her residual functional capacity; there was no documentation of side-effects from medication; she had an inconsistent treatment history; and her treating rheumatologist did not prescribe or note the use of any strong pain medication. *See* Tr. 39. Plaintiff has not offered information or argument sufficient to overcome the deference due to the ALJ's reasonable credibility determination. *See Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (if supported by substantial evidence, ALJ's credibility determination entitled to "great weight and deference....").

Lastly, the ALJ evaluated the evidence regarding Plaintiff's mental impairments and reasonably concluded that those impairments furthered limit her ability to do basic work activities given the limitations the ALJ accommodated in his assessment of Plaintiff's Residual Functional Capacity. The ALJ found that Plaintiff's dysthymic disorder and depression were severe impairments. (Tr. 26, 28). He examined her activities of daily living and her treatment history. (Tr. 37). He considered the opinion of the consulting examiner, Dr. Schulz, who felt Plaintiff had minimal to mild impairments in her work-related mental abilities. *See* Tr. 302. The ALJ also considered the opinions of the state agency psychologists, who stated that Plaintiff was capable of "simple to moderately complex tasks (1-3 steps);" could "interact appropriately;" and would do best in a "low stress environment." (Tr. 234, 250). The ALJ noted that therapist Iwinski and Dr. DeLeon diagnosed moderate symptoms. (Tr. 30, 255-58, 332). The ALJ considered the opinion of the medical expert, who concluded that Plaintiff could not perform a job with high production quotas, involving assembly-line work, or that paid by the piece, and could only have superficial contact with others. 2(Tr. 778). Finally, the ALJ considered

the opinion of Dr. Songer. The ALJ observed that Dr. Songer's issued her opinion on the first day she examined Plaintiff, and therefore, the treatment relationship did not warrant special deference. *See* Tr. 21, 35; *see also Smith v. Commissioner of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)("A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'")(quoting 20 C.F.R. § 404.1502); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("Dr. Ruff examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here."). The ALJ also noted that Dr. Songer did not think Plaintiff's mental impairment would last more than eleven months, and that Dr. Songer thought that Plaintiff's disability was a function mostly of her physical limitations – the opposite of what Dr. Adib thought. (Tr. 34-35).

Accordingly, for the above reasons, the ALJ applied the correct legal criteria to the evaluation of the record and Plaintiff's disability status and substantial evidence supports the ALJ's findings.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be affirmed; and

2. The case be terminated on the docket of this Court.

March 17, 2010                                         s/Sharon L. Ovington
                                                      Sharon L. Ovington
                                                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).